```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
WILLIAM DIECK,

                Plaintiff,            MEMORANDUM & ORDER
                                      09-CV-2263(JS)(ETB)
        -against-

SUFFOLK COUNTY VANDERBILT MUSEUM,
CAROL GHIORISHI-HART and STEVEN
GITTELMAN,

                Defendants.
----------------------------------X
APPEARANCES:
For Plaintiff:     John J. Leo, Esq.
                   191 New York Avenue
                   Huntington, NY 11743

For Defendant:     Lawrence J. Natalie, Esq.
                   Drew W. Schirmer, Esq.
                   Suffolk County Attorney's Office
                   100 Veterans Memorial Highway
                   PO Box 6100
                   Hauppauge, NY 11788
```

SEYBERT, District Judge:

In this employment discrimination case, Plaintiff William Dieck ("Plaintiff") alleges that Defendants Suffolk County Vanderbilt Museum (the "Museum"), Carol Ghiorsi Hart ("Hart")[1] and Steven Gittelman ("Gittelman") fired him and replaced him with a recently-hired, substantially younger employee. Plaintiff asserts claims under the Age Discrimination in Employment Act of 1967 (the "ADEA") and Sections 296 and 297 of the New York State Human Rights Law (the "NYSHRL").

---

[1] Plaintiff named "Carol Ghiorsi-Hart" in his Complaint, but Hart's surname is not hyphenated.

Defendants have moved for summary judgment; for the reasons that follow, their motion is GRANTED.

BACKGROUND

Plaintiff began working at the Museum in 1999 and was promoted to Director of Operations six months later. (Def. 56.1 Stmt. ¶ 1-2.) As Director of Operations, Plaintiff was responsible for supervising between 35 and 40 Museum employees. (Def. 56.1 Stmt. ¶ 3.) These employees included the wood shop personnel, the grounds crew, and the security staff, was well as the Museum's historic carpenter. (Def. 56.1 Stmt. ¶ 4.) Although he has some training as a historic carpenter, Plaintiff would generally not perform carpentry work himself. (Pl. Dep. 71-72.) His annual salary was $42,500 and he did not receive health benefits. (Id. at 11.) During his employment, Plaintiff was never told that his supervisors were unhappy with his performance. (Id. at 71.)

In February 2008, Hart posted a job opening for a position titled "Museum Restoration Supervisor." (Def. 56.1 Stmt. ¶ 9.) According to the job post, this position's responsibilities included: performing "craftsman level work in the restoration and preservation of historic buildings, and in exhibit fabrication"; assisting "the Executive Director in evaluating conditions of the historic buildings and landscape,

2

suggesting methods of restoration based upon consultation with curators and archival research"; supervising "grounds maintenance crew in specific procedures consistent with historic preservation"; supervising and assisting "master gardeners in restoration and maintenance of gardens and landscapes"; and assisting the "Director of Operations at times of high seasonal needs with maintenance of grounds and special projects." (Def. Ex. H, Museum Restoration Supervisor Position Announcement.) In the section describing the skills and characteristics required for the job, the announcement included "ability to lead the work of subordinate employees and volunteers in a manner conducive to full performance and high morale." (Id.) To be considered for the job, candidates must have had either a college degree plus two years of supervisory experience or four years of supervisory experience at a historic property or museum. (Id.)

In March 2008, Hart hired Peter Newman, who was in his late twenties, to fill the newly-created position. (Def. 56.1 Stmt. ¶¶ 12, 16.) Newman had previously worked at the Museum; between 2000 and 2004, he worked as a groundskeeper and also performed some carpentry work. (Id. ¶ 8.) Shortly after Newman re-joined the staff, Hart met with both Newman and Plaintiff to re-structure their supervisory duties. Newman, who was considered a historic carpenter, would report directly to

Hart, even though the Museum's historic carpenters traditionally had reported to the Director of Operations. (Pl. Dep. 30-31.) In the new position, Newman would also supervise the master gardeners. (Id.) Newman was paid $32,000 annually plus health benefits worth approximately $8,400, for a total compensation package worth $40,400 per year. (See Newman Dep. 14; see also Hart Dep. 9, 64.)

Around the time that it hired Newman, the Museum was experiencing significant financial troubles, (see Def. 56.1 Stmt. ¶ 21), and had cut a large number of employees. For example, it let go between 20 and 25 of its security guards in favor of an outside security force. (Id. ¶ 5.) As a result of downsizing, by the time he was fired Plaintiff was only supervising three employees, down from the 35-40 that had been under his watch earlier in his career. (Id. ¶ 17.) Among Plaintiff's subordinates who were terminated were a 70-year-old manager of buildings and grounds and a 30-year-old mechanic. (Pl. Dep. 25-27.) Plaintiff acknowledges that the Museum's downsizing was a response to its money woes. (Def. 56.1 Stmt. ¶ 21.)

Plaintiff was fired on either March 30 or 31, 2008, approximately two weeks after Newman was hired as the Museum Restoration Supervisor. (See Def. 56.1 Stmt. ¶¶ 48-49.) Hart

4

delivered the bad news, and she told Plaintiff that he was being let go so that the Museum could use the money it saved to buy a new flooring platform to host wedding receptions. (Id. ¶ 50.) Hart did not say that age was a factor in her decision to fire Plaintiff, (id. ¶ 57), and neither side points to evidence that anyone commented directly or indirectly about Plaintiff's age.

Although Hart cited the Museum's need for a new flooring platform when she fired him, Plaintiff maintains that, for the following reasons, the Museum's financial distress was not as severe as Defendants claim. First, the Museum was able to bring its security force back in-house in November 2008, just eight months after Plaintiff was fired. (Def. Ex. D, Hart Dep. 47-48.) Second, there is evidence that the Museum planned to hire additional employees around the time that Plaintiff was fired. (Pl. Exs. K, L.) Third, Plaintiff claims that, contrary to what Hart told him when he was fired, the Museum already had money in its budget for a new flooring platform. In support of this claim, Plaintiff relies on an April 3, 2008 email from Hart to Gittelman that includes a footnote that she had budgeted $40,000 for the new floor and that she was ready to place the order, provided the Museum could arrange to spread payments through June 1. (Pl. Ex. P.; Pl. Opp. 9.) She also explains that the Museum was $71,603 ahead of its budget. (Pl Ex. P.)

5

This email does not say how much the floor cost, how the Museum came to be ahead of its budget, or what impact, if any, Plaintiff's firing had on the Museum's cash projections. <u>Fourth</u>, Plaintiff notes that the Museum eventually paid Newman an amount (factoring in wages and benefits) comparable to what it had paid Plaintiff. In Plaintiff's view, this undercuts the Museum's claim that money woes prompted Plaintiff's firing. (Pl. Opp. 10.)

## DISCUSSION

Plaintiff alleges that his termination was the result of unlawful age discrimination because he was two weeks shy of his sixtieth birthday when he was fired and because Newman, who was 35 years younger than Plaintiff, was hired to perform the functional equivalent of Plaintiff's job less than two weeks before Plaintiff was fired. Because Plaintiff has not proffered evidence to convince a reasonable jury that age was a motivating factor behind Plaintiff's termination (much less a but-for cause), Defendants' motion for summary judgment is granted.

I. <u>Legal Standard</u>

Summary judgment is only appropriate where the moving party can demonstrate that there is "no genuine dispute as to any material fact" and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In

considering this question, the Court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265, 273 (1986); McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997); see also Fed. R. Civ. P. 56(c). "In assessing the record to determine whether there is a genuine issue to be tried . . . the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee, 109 F.3d at 134. The burden of proving that there is no genuine issue of material fact rests with the moving party. Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994) (citing Heyman v. Com. & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975)). Once that burden is met, the non-moving party must "come forward with specific facts," LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998), to demonstrate that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson v. Liberty Lobby, 477 U.S. 242, 257, 106 S. Ct. 2505, 2514-15, 91 L. Ed. 2d 202, 218 (1986). "Mere conclusory allegations or denials will not suffice." Williams v. Smith,

781 F.2d 319, 323 (2d Cir. 1986). And "unsupported allegations do not create a material issue of fact." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

Courts are cautious in awarding an employer summary judgment in cases where its intent--i.e., its alleged discriminatory motive--is an issue. McLee, 109 F.3d at 135. Nevertheless, summary judgment is warranted where the plaintiff's case is wholly lacking in genuine questions of material fact. Id. As discussed below, this is one such case.

II. Analysis

Plaintiff asserts three causes of action: (1) against all Defendants, an ADEA employment discrimination claim; (2) against all Defendants, an employment discrimination claim under NYSHRL Sections 296 and 297; and (3) against Hart and Gittelman, an aiding-and-abetting claim under NYSHRL Section 296(6). The Court addresses each in turn.

A. Plaintiff's ADEA Claim

Prior to the U.S. Supreme Court's recent decision in Gross v. FBL Financial Services, 557 U.S. __, 129 S. Ct. 2343, 174 L. Ed. 2d. 119 (2009), ADEA claims were analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 26 L. Ed. 2d 668 (1973). See Gorzynski v. Jetblue Airways, Corp., 596 F. 3d 93, 105-06

(2d Cir. 2010). Under McDonnell Douglas, a plaintiff must first establish a prima facie case of discrimination. Id. If plaintiff meets his initial hurdle, the "burden shifts to the defendant to articulate 'some legitimate, nondiscriminatory reason' for its" allegedly discriminatory action. Id. (quoting McDonnell Douglas, 411 U.S. at 802). If the defendant does so, the plaintiff may still prevail if he can show that the defendant's articulated reason was simply a pretext for discrimination. Id. Prior to Gross, a plaintiff could prevail if he could prove that the defendant's action was motivated at least in part by a discriminatory intent. Id.

In Gross, the Supreme Court clarified that age discrimination plaintiffs cannot prevail under ADEA on a mixed-motive theory. Id. In other words, plaintiffs alleging age discrimination must prove by a preponderance of the evidence that age discrimination was the but-for cause of the defendant's employment decision. Gross, 129 S. Ct. at 2351. Gross did not do away with the McDonnell Douglas burden-shifting framework, and the Second Circuit has largely continued to apply it in Gross' wake. See Gorzynski, 596 F.3d at 106 (analyzing post-Gross ADEA claim under McDonnell Douglas); Sullivan v. Brodsky, 380 Fed. Appx. 21, 21 (2d Cir. 2010) (same); Holowecki v. Federal Exp. Corp., 382 Fed. Appx. 42, 45 n.2 (2d Cir. 2010);

9

but see Davey v. Jones, 371 Fed. Appx. 146, 149 (2d Cir. 2010) (suggesting McDonnell Douglas framework and Gross analysis are mutually exclusive). Accordingly, the Court first considers whether Plaintiff has established a prima facie case of age discrimination. Next, it considers whether Defendants have articulated a legitimate reason for Plaintiff's termination. Finally, it examines whether Defendants' articulated reason is pretextual. See Holowecki, 382 Fed. Appx. at 45. At this third stage, Plaintiff "must offer evidence that age discrimination was the 'but-for' cause of the challenged actions." Id. (quoting Gross, 129 S. Ct. 2343, 2350)).

### 1. Prima Facie Case

To establish a prima facie case of age discrimination, Plaintiff must establish that (1) he was within the protected age group; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) such action occurred "under circumstances giving rise to an inference of discrimination." Gorzynski, 596 F.3d at 107. Plaintiff has satisfied the minimal showing required at this stage. See id. A plaintiff's being replaced by a younger worker generally gives rise to an inference of age discrimination. See Gorzynski, 596 F.3d at 107; see also Graves v. Finch Pruyn & Co., Inc., 457 F.3d 181, 187 (2d Cir. 2006) (plaintiff who was replaced with

10

substantially younger employee satisfied prima facie burden). Defendants suggest that Plaintiff was not replaced by Newman; rather, Plaintiff's job was eliminated because there was only a handful of Plaintiff's former subordinates left to supervise. The Court thinks it fair to infer that Newman, who was hired two weeks before Plaintiff was fired and whose job description emphasized a supervisory role, took over what little supervisory responsibilities Plaintiff had prior to his termination. This is sufficient to state a prima facie case. See Carlton v. Mystic Transp., Inc., 202 F.3d 129, 135 (2d Cir. 2000).

2. Legitimate, Non-Discriminatory Reason

Defendants argue that its financial woes caused it to terminate Plaintiff. (Def. Br. 8.) Financial difficulties and cost-cutting can be legitimate reasons to terminate an employee. See, e.g., Caronia v. Hustedt Chevrolet, No. 05-CV-3526, 2009 WL 909729, at *7 (E.D.N.Y. Apr. 1, 2009) (employer's poor financial condition was legitimate reason for reducing employee's pay); Phillips v. Centrix, Inc., No. 07-CV-1455, 2009 WL 378586, at *3 (D. Conn. Feb. 13, 2009) ("A restructuring and reorganizing of operations is a legitimate non-discriminatory reason for termination.") (citations omitted). Defendants have thus articulated a legitimate, non-discriminatory reason for its action.

11

3. Pretext

The third stage of the McDonnell Douglas analysis requires the Court to ask whether Plaintiff "has raised sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that [Plaintiff's] age was a 'but for' cause of [Defendants'] decision to fire [him]." Gorzynski, 596 F.3d at 107. "In this respect it is important to consider whether the explanations that [Defendants] gave for [Plaintiff's] firing were pretextual." Id. Further, even if Plaintiff's evidence suggests that Defendants' reason was pretextual, Plaintiff also bears the burden of establishing that the reason was a pretext for age discrimination. Norville v. Staten Isl. Univ. Hosp., 196 F.3d 89, 98 (2d Cir. 1999).

Defendants are entitled to summary judgment on Plaintiff's ADEA claim because, viewing the evidence in his favor and affording him every reasonable inference, Plaintiff has not offered sufficient evidence to convince a reasonable jury that Defendants fired him because of his age. Plaintiff essentially argues that equivocal evidence about the Museum's financial health, combined with Plaintiff's being replaced by a younger employee, is sufficient. The Court disagrees for two reasons. First, Plaintiff's evidence purportedly showing that the Museum had more money than it said it did when it fired him

12

is taken out of context.  In particular, the emails showing that the Museum planned to hire more staff also described Hart's efforts to manage the Museum's strained fiscal situation.  (Pl. Exs. K, L.)  In September 2007, Hart wrote that she wanted to hire Newman because he has the skills to "fill[] pieces of our open slots" and that he would help cut down on the overtime the Museum was paying its grounds crew at the time.  (Pl. Ex. K.)  Hart's January 2008 email, which again explained that Newman would help reduce the Museum's overtime bill, included a projected budget that reflected a 15% cut in budgeted salaries.  (Pl. Ex. L.)  Similarly, Hart's email in which she writes that the Museum was ready to buy the new floor platform does not reveal the effect that Plaintiff's firing had on the Museum's finances--e.g., whether the Museum was able to buy the floor because it had freed up money that would have otherwise been paid toward Plaintiff's salary.  (See Pl. Ex. P.)  Further, Plaintiff himself acknowledged the Museum's financial straits, and it is undisputed that it had recently resorted to significant layoffs.  See supra at 4-5.  In short, only a severely strained reading of the documents in this case would support a view that the Museum was on firm financial footing when it terminated Plaintiff.

Second, and more to the point, is that even if

13

Defendants' stated reason for firing Plaintiff was pretextual, there is no evidence to show that it was a pretext for age discrimination. Roge v. NYP Holdings, Inc., 257 F.3d 164, 170 (2d Cir. 2001); Norville, 196 F.3d at 98. At best, Plaintiff can point to evidence suggesting that Defendants replaced him with Newman not because of his age but because he was a difficult employee (see Def. Ex. E, Gittelman Dep. 51), or because they knew and liked Newman from Newman's previous stint at the Museum (see Pl. Ex. L), or both. Save for Newman's youth, there is nothing remotely suggesting that Plaintiff's age played any part in the Defendant's decision. And a replacement worker's age, without more, is insufficient to prove age discrimination. E.g., Fagan v. N.Y. State Elec. & Gas Corp., 186 F.3d 127, 134 (2d Cir. 1999); Mattera v. JPMorgan Chase Corp., 740 F. Supp. 2d 561, 577 (S.D.N.Y. 2010) ("[P]laintiff's sole remaining fact in support of discrimination, namely that he was replaced by a younger worker, cannot defeat a motion for summary judgment.").

B. NYSHRL

Defendants are entitled to summary judgment on their NYSHRL claims, also. NYSHRL claims are analyzed under the same McDonnell Douglas framework as ADEA claims. See, e.g., Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir.

14

2001); Deebs v. Alstom Transp., Inc., 346 Fed. Appx. 654, 656 (2d Cir. 2009). Although it is not entirely clear whether, post-Gross, Plaintiff must prove that discriminatory animus was a but-for cause of his termination under the NYSHRL, e.g., DiGirolamo v. MetLife Group, Inc., No. 10-CV-1537, 2011 WL 2421292, at *4 n.6 (S.D.N.Y. June 6, 2011), Plaintiff cannot prevail under either a but-for or mixed motive standard. For the same reasons as those discussed above, Plaintiff has not offered anything to suggest age was a motivating factor in Plaintiff's decision to fire him. Accordingly, Defendants are entitled to summary judgment on Plaintiff's NYSHRL claims.

Hart and Gittelman are also entitled to summary judgment on Plaintiff's NYSHRL aiding and abetting claims. There is no aiding and abetting liability absent a viable underlying claim. See, e.g., Summa v. Hofstra Univ., No. 08-CV-0361, 2011 WL 1343058, at *25 (E.D.N.Y. Apr. 7, 2011).

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The Clerk of the Court is directed to CLOSE this case.

SO ORDERED.

Dated:  September   22  , 2011        /s/ JOANNA SEYBERT_____
        Central Islip, New York       Joanna Seybert, U.S.D.J.

15